**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

CUSTOM BUILDING PRODUCTS, LLC,

Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,

Defendant.

No. _____

Judge:

Magistrate Judge:

**JURY TRIAL DEMANDED**

**COMPLAINT FOR DECLARATORY
JUDGMENT, DAMAGES, AND OTHER RELIEF**

Plaintiff Custom Building Products, LLC ("Custom"), by and through its legal counsel, Neal, Gerber & Eisenberg LLP and Scheidemantle Law Group P.C. (*pro hac vice* application pending) and for its Complaint for Declaratory Judgment, Damages, and Other Relief against National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), states as follows:

**NATURE OF ACTION**

1.      This insurance coverage dispute arises from a lawsuit filed in the United States District Court for the Northern District of Illinois by Liberty Surplus Insurance Corporation ("Liberty"), as Subrogee and Assignee of Northern Illinois Terrazzo & Tile Co. ("NITT") and as Subrogee of Power Construction Company ("Power"), against Custom entitled *Liberty Surplus Insurance Corp., et al.*, *v. Custom,* Case No. 1:17-cv-03176 (the "Underlying Litigation").  In the Underlying Litigation, Liberty seeks to recover from Custom amounts paid by Liberty and NITT in settlement of a claim by Fashion Outlets of Chicago, LLC, and The Macerich Partnership, LP (collectively "FOC"), over an allegedly defective tile floor installed at Fashion Outlets of Chicago shopping center (the "Center").  National Union and Custom have a dispute concerning

29243942.1

the extent of National Union's coverage obligations to Custom in connection with the Underlying Litigation. Custom now seeks declaratory and other relief from this Court to secure insurance coverage from National Union in accordance with its coverage obligations to Custom.

## PARTIES

2.     Custom is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Atlanta, Georgia. Custom's sole member is Quikrete Holdings, Inc., a corporation duly organized under the laws of the State of Delaware with its principal place of business in Atlanta, Georgia.

3.     National Union is, upon information and belief, an insurance company organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in New York, New York. National Union is licensed to transact business, and does transact business, in the State of Illinois.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs. This Court has personal jurisdiction over National Union because it transacts business in Illinois.

5.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because National Union is subject to personal jurisdiction in this judicial district by virtue of its continuous, systematic contacts with Illinois. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this claim occurred in this judicial district by virtue of the Underlying Litigation pending in this judicial district before The Honorable Ruben Castillo and the events giving rise to the Underlying Litigation occurring in this judicial district.

29243942.1

## CUSTOM'S INSURANCE POLICIES

6.     National Union issued the following insurance policies to Custom (then known as Custom Building Products, Inc., prior to a name change pursuant to 6 Del. Code § 18-214):

> (a)     A commercial general liability insurance policy, Policy No. GL 536-15-28, covering the policy period of April 1, 2013, to April 1, 2014, with limits of $1,000,000 per occurrence (the "Primary Policy"). A true and correct copy of the Primary Policy is attached hereto as **Exhibit A** and incorporated herein by this reference.

> (b)     A commercial umbrella liability policy, Policy No. BE 011566576, covering the policy period of April 1, 2013, to April 1, 2014, with limits of $25,000,000 in excess of the limits of the Primary Policy and any other applicable policy (the "Umbrella Policy" and together with the Primary Policy, the "Policies"). Custom is not aware of any other policy applicable to the Underlying Litigation. A true and correct copy of the Umbrella Policy is attached hereto as **Exhibit B** and incorporated herein by this reference.

7.     The Primary Policy obligates National Union to "pay those sums that the insured becomes legally obligated to pay as damages because of … 'property damage'" that is "caused by an 'occurrence' that takes place in the 'coverage territory'" during the policy period. (Primary Policy, Sections I.A.1.a. and b.), and the Umbrella Policy imposes the same obligation on National Union for sums in excess of Primary Policy limits. (Umbrella Policy, Sections I.A. and B.)

8.     Both Policies define "property damage" as "physical injury to tangible property, including all resulting loss of use of that property," and "loss of use of tangible property that is not physically injured." (Primary Policy, Section V.17; Umbrella Policy, Section VII.X.)

29243942.1

9.     As demonstrated by the allegations set forth below, the Underlying Litigation falls within the scope of coverage provided by the Policies, and National Union has an obligation to provide full coverage for any settlement or judgment regarding the Underlying Litigation up to the combined limits of the Primary Policy and Umbrella Policy of $26,000,000.

## THE UNDERLYING LITIGATION

10.     The Underlying Litigation arises from a claim by FOC against NITT, Power, and Custom alleging installation of a defective tile floor at the Center (the "FOC Claim").  FOC claimed that soon after the Center opened in August 2013, FOC discovered pervasive and systemic defects in the tile floor causing tile debonding and breakage.  FOC further contended that the tile floor constitutes an integrated system and that the entire tile floor system was damaged.  FOC sought repair and replacement of the entire floor.  Power was the general contractor hired by FOC to construct the Center, and NITT was the subcontractor hired by Power to install the tile floor.  NITT purchased mortar for the tile floor installation from Custom.

11.     In April 2016, the FOC Claim was settled (the "FOC Settlement"), with payments to FOC by NITT, by Liberty on behalf of Power and NITT, and by an Owner-Controlled Insurance Policy on behalf of Power and NITT.  FOC released Custom with no payment by Custom.  Liberty paid FOC $1,850,000 toward the FOC Settlement on behalf of Power and NITT.  NITT paid FOC $150,000 toward the FOC Settlement and assigned its right to recover its settlement payment to Liberty.

12.     On April 27, 2017, Liberty filed the Underlying Litigation against Custom.

13.     The Underlying Litigation alleges, *inter alia*, that Custom acted carelessly and negligently in supplying mortar for the FOC tile floor, and that as a result of Custom's careless and negligent acts, the entire tile floor system at the Center was damaged.  Liberty seeks to recover from Custom all or a portion of Liberty's and NITT's settlement payments to FOC,

which total $2,000,000. A true and correct copy of the Complaint filed in the Underlying Litigation is attached hereto as **Exhibit C** and incorporated herein by reference. Custom has denied responsibility for damage to the tile floor at the Center.

14.     Extensive discovery has been conducted in the Underlying Litigation, including depositions of experts, and trial is scheduled for June 10, 2019. Liberty has designated the same experts as FOC used in connection with the FOC Claim. Those experts have testified in deposition that the entire tile floor on the second floor of the Center constitutes an integrated flooring system that is damaged and needs to be replaced. They further testified that the damage to the tile floor was caused by the mortar supplied by Custom. Custom intends to present evidence at trial refuting Liberty's claims, including that only a small portion of the tile floor was damaged and needed to be replaced, that the Center has in fact replaced only that small portion of the tile at a cost of $18,500, and that any damage to the floor was not caused by Custom.

## NATIONAL UNION'S FAILURE TO MEET ITS COVERAGE OBLIGATIONS

15.     National Union was timely notified of the Underlying Litigation and has defended Custom subject to a reservation of rights. However, despite Liberty's claims falling squarely within National Union's property damage coverage under the Policies, National Union has failed to meet its coverage obligations.

16.     In the course of the Underlying Litigation, National Union and Custom have engaged in settlement discussions with Liberty. The Honorable Ruben Castillo, before whom the Underlying Litigation is pending, has recommended a settlement amount that is well within the Primary Policy's limits, and Liberty has made a settlement demand in an amount that is below the Primary Policy's limits. National Union has refused to offer to pay on behalf of Custom the amount of Judge Castillo's recommendation and instead has offered to pay an amount that is a fraction of the Primary Policy's limits, and an even smaller fraction of the

combined limits of the Primary Policy and the Umbrella Policy, while contending that Custom should contribute financially to reach a settlement higher than the amount National Union is willing to pay.

17.     National Union's reasons for refusing to fully fund a reasonable settlement with Liberty are not based on grounds that support a coverage defense but rather on grounds that support Custom's defense in the Underlying Litigation.  In a letter dated December 18, 2018, stating National Union's coverage position with respect to the Primary Policy ("12/18/18 Coverage Letter," attached hereto as **Exhibit D** and incorporated herein by reference), National Union's claims administrator, AIG Claims, Inc. ("AIG"), stated that the Center had not replaced the entire tile floor but rather had "made repairs to the flooring totaling only approximately $18,500 since the Center was completed in August 2013."   The letter goes on to deny that National Union is responsible for damages beyond the $18,500 expended by the Center for tile replacement, stating:

> "Plaintiff [Liberty] seeks to recover the cost to repair the tile throughout the Center. However … it is National Union's understanding that the majority of the Center's flooring is not damaged and still in use today.  In this regard, the Center has replaced the tile that was alleged [*sic*] damaged at a total cost of $18,500.  To the extent that Plaintiff seeks to recover costs to repair tile that is not physically injured, no coverage for such amounts would be available under the Policy.  National Union therefore reserves the right to deny coverage for any damage that does not constitute 'property damage.'"

AIG asserts the same position in a coverage letter regarding the Umbrella Policy dated February 8, 2019 ("2/8/19 Coverage Letter," attached hereto as **Exhibit E** and incorporated herein by reference).  National Union's stated coverage position fails to take into account (a) that Liberty's

claim, disputed by Custom, is that the tile floor constitutes an integrated flooring system the entirety of which is physically injured and (b) the possibility that a court or jury could agree with Liberty. In its 12/18/18 and 2/8/19 Coverage Letters, National Union also reserves its right to deny coverage based on certain exclusions that are inapplicable to Liberty's claim.

18.     In subsequent correspondence, National Union's attorneys have continued to contend that the vast majority of the tile flooring in the Underlying Litigation has not sustained property damage as justification for National Union's limited contribution to a potential settlement.

19.     National Union conflates Custom's defense in the Underlying Litigation with National Union's coverage obligations. At issue in the Underlying Litigation is whether only certain tiles were damaged or the entire floor as a system was damaged, and who was responsible for that damage. National Union relies on Custom's experts to assert that only a small portion of the tile floor sustained damage, and ignores that Liberty will attempt to prove to a jury that the entire flooring system is damaged. If Liberty succeeds in proving that the entire floor is an integrated flooring system that is damaged, such damage would fall within the definition of "property damage" in the Policies, and National Union would be obligated under the to pay for the amount of such damage for which Custom is found to be responsible.

20.     National Union's position that its indemnity obligations are limited to the damages that would be assessed if Custom's theory of the Underlying Litigation is successful – *i.e.*, that damage is limited to a small portion of the Center's tile floor that is severable from the rest of the floor – is in violation of its duty to Custom as its insured. National Union's untenable position leaves Custom without the benefit of the bargain of the Policies to provide the full promised protection in the Underlying Litigation.

## COUNT I
### (Declaratory Judgment – Coverage Obligations)

21.     Custom incorporates and realleges the allegations in Paragraphs 1 through 20 as if the same were fully set out herein.

22.     Pursuant to 28 U.S.C. § 2201, an actual controversy has arisen with respect to National Union's coverage obligations to Custom under the Policies with respect to the Underlying Litigation and Custom is therefore entitled to seek a judicial determination of any question or construction of the Policies and to obtain a declaration of rights, status, or legal relations thereunder.

23.     The evidence adduced in the Underlying Litigation implicates National Union's duty to fully indemnify Custom, first under the Primary Policy and if necessary under the Umbrella Policy, up to the Umbrella Policy limits.

24.     National Union has failed to fully indemnify Custom up to even Primary Policy limits by requiring that Custom contribute financially if necessary to reach a settlement higher than the limited amount National Union is willing to pay.

25.     By reason of the foregoing, an actual and justiciable controversy exists between the parties, which may be determined by a judgment or order of this Court.

26.     The issuance of a declaratory judgment with respect to the parties' dispute regarding whether National Union is obligated to fully indemnify Custom first up to Primary Policy limits and then, if necessary, up to Umbrella Policy limits in the Underlying Litigation will terminate existing uncertainty and controversy between the parties relative to the construction of the Policies and the parties' rights, status, and legal relations thereunder.

**WHEREFORE**, Custom respectfully requests that this Court enter a judgment finding and declaring that National Union has an obligation to fully indemnify Custom under the

Primary Policy, and under the Umbrella Policy if damages exceed Primary Policy limits, in an amount not to exceed Umbrella Policy limits for any settlement or judgment in the Underlying Litigation, and award all other just and proper relief.

## COUNT II
### (Breach Of Primary Policy and Anticipatory Breach of Umbrella Policy)

27.     Custom incorporates and the allegations in Paragraphs 1 through 26, as if the same were fully set out herein.

28.     National Union is obligated under the Policies to pay any amount, up to Umbrella Policy limits, that Custom becomes legally obligated to pay in the Underlying Litigation, whether as a result of a settlement or a judgment.  No exclusions apply that would preclude National Union's indemnity obligation to Custom with respect to the Underlying Litigation.

29.     Custom has paid all premiums and substantially performed any and all conditions under the Policies.

30.     National Union's requirement that Custom contribute financially if necessary to reach a settlement higher than the limited amount National Union is willing to pay in any settlement of the Underlying Litigation constitutes a breach of its contractual obligation under the Primary Policy and a positive and unequivocal repudiation of its contractual obligations under the Umbrella Policy should Custom become legally obligated to pay damages in the Underlying Litigation.  As such, National Union has engaged in a breach of the Primary Policy and an anticipatory breach of the Umbrella Policy.

31.     As a direct and proximate result of National Union's breach of contract, Custom has suffered damages and will be deprived of the benefit of timely insurance proceeds in the event it is legally required to pay Liberty as the result of a settlement or judgment in the Underlying Litigation.  Custom's damages include, but are not limited to, any amount it is

required to pay Liberty, as well as prejudgment interest and attorneys' fees of its coverage counsel.

**WHEREFORE**, plaintiff Custom respectfully requests that this Court enter a judgment in its favor and against defendant National Union; award Custom damages in an amount sufficient to compensate it for all damages resulting from the breach of contract by National Union, plus prejudgment interest and attorneys' fees of its coverage counsel; and award all other just and proper relief.

<u>**COUNT III**</u>
**(Vexatious and Unreasonable Conduct)**

32.     Custom incorporates and realleges the allegations in Paragraphs 1 through 31, as if the same were fully set out herein.

33.     Viewing the totality of the circumstances surrounding National Union's conduct towards Custom, National Union's conduct was, and continues to be, vexatious and unreasonable.

34.     National Union has improperly used Custom's defense in the Underlying Litigation – that only a small portion of the tiles in the Center's floor were damaged – as a rationale for limiting its coverage obligation to Custom.  Notwithstanding Custom's defense, the outcome of the Underlying Litigation is uncertain, and a court or jury could possibly find, in accordance with Liberty's theory, that the floor constitutes a system that was damaged in its entirety.  National Union's refusal to indemnify Custom for damages under Liberty's theory lacks legal support and rationality.  National Union has failed to assert any valid reasons that its coverage obligations under the Policies should not include any and all amounts that Custom may be required to pay Liberty in the Underlying Litigation, first up to Primary Policy limits and then

if necessary up to Umbrella Policy limits. There is no *bona fide* dispute about National Union's defense obligation to Custom based on the plain language of the Policies and applicable law.

35. Custom is informed and believes that National Union engages in a pattern and practice of attempting to coerce its insureds to financially participate in settlement of covered claims in order to decrease its payouts under the insurance policies it issues in order to improve its financial position. On information and belief, National Union's refusal to offer more money to settle with Liberty, and instead to ask Custom to contribute to any settlement, is in keeping with such pattern and practice and constitutes a willful and unreasonable effort to avoid its obligations under the Policies. In so doing, National Union has acted unreasonably and has displayed an attitude that is vexatious, recalcitrant, and in reckless disregard of Custom's rights under the Policies.

36. As a proximate result of National Union's unreasonable, vexatious, and inexcusable refusal to honor its coverage obligation under the Policies, Custom has been damaged and has been forced to bring this action against National Union to enforce its rights under the Policies. This Court should hold National Union liable for all of Custom's damages, attorneys' fees, costs, and prejudgment interest resulting from National Union's unreasonable and vexatious conduct.

**WHEREFORE**, Custom respectfully requests that this Court enter a judgment in its favor and against defendant National Union; award Custom damages in an amount sufficient to compensate it for all damages resulting from National Union's unreasonable conduct, including attorneys' fees and costs; and award all other just and proper relief.

29243942.1

Dated:  May 2, 2019            CUSTOM BUILDING PRODUCTS, LLC


                                   By:     /s/ Paul Walker-Bright
                                         One of the Attorneys for Plaintiff,
                                         Custom Building Products, LLC


Paul Walker-Bright (ARDC# 6226315)
pwalkerbright@nge.com
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street, Suite 2200
Chicago, Illinois  60602
Telephone:  (312) 269-8000
Facsimile:  (312) 269-1747

*Of Counsel:*

David R. Scheidemantle (*pro hac vice* application pending)
David@Scheidemantle-Law.com
Deborah S. Bucksbaum (*pro hac vice* application pending)
Deborah@Scheidemantle-Law.com
SCHEIDEMANTLE LAW GROUP P.C.
35 East Union Street, Suite F
Pasadena, California 91103
Telephone:  (626) 660-4434
Facsimile:  (800) 616-4410

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Custom hereby demands a trial by jury on all issues so triable.

CUSTOM BUILDING PRODUCTS, LLC


By: /s/ Paul Walker-Bright
        One of the Attorneys for Plaintiff,
        Custom Building Products, LLC

29243942.1